Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/15/2024 08:06 AM CDT

Allen Crow, appellant, v. Nebraska
Department of Revenue, appellee.

___ N.W.3d ___

Filed March 15, 2024.    No. S-23-060.

1. **Administrative Law: Taxation: Final Orders: Appeal and Error.** Any final action of the Tax Commissioner may be appealed, and the appeal shall be in accordance with the Administrative Procedure Act.

2. **Administrative Law: Judgments: Appeal and Error.** In an Administrative Procedure Act review proceeding, the district court reviews the agency's decision de novo on the record of the agency and may affirm, reverse, or modify the decision of the agency or remand the cause for further proceedings.

3. ____: ____: ____. In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.

4. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

5. **Estoppel.** Although a party can raise estoppel claims in both legal and equitable actions, estoppel doctrines have their roots in equity.

6. **Laches: Equity.** The defense of laches is equitable in nature.

7. **Equity: Appeal and Error.** In reviewing judgments and orders disposing of claims sounding in equity, an appellate court decides factual questions de novo on the record and reaches independent conclusions on questions of fact and law.

8. **Taxation: Property.** Nebraska imposes a tax on each item of tangible personal property in this state at some point in the chain of commerce, unless the item is specifically excluded from taxation. If the item is purchased in Nebraska, the sales tax applies, and if the item is purchased outside Nebraska, the use tax applies. Nebraska's sales and use taxes are thus interrelated, and together, they provide a uniform tax

upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property.

9. **Taxation: Proof.** In proceedings before the Tax Commissioner, the taxpayer generally has the burden of proof.

10. **Judgments: Appeal and Error.** In conducting such a review for errors appearing on the record, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports those findings.

11. **Intent: Proof: Circumstantial Evidence.** Intent is a question of fact, which may be determined by circumstantial evidence.

12. **Estoppel.** Equitable estoppel generally bars a party from relief because of its prior actions.

13. **Political Subdivisions: Estoppel: Equity.** The State and its political subdivisions can be equitably estopped, but the doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand; in such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice.

14. **Estoppel.** The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements of equitable estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

15. **Laches.** The defense of laches is not favored in Nebraska.

16. **____.** Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice.

17. **Laches: Equity.** Laches does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another.

18. **Laches.** What constitutes laches depends on the circumstances of the case.

19. ____. Laches cannot be applied where there has been no material change in a party's position.
20. **Laches: Political Subdivisions.** As a general rule, the doctrine of laches cannot be applied against public rights. In other words, laches is not available against the government or state in a suit by it to enforce a public right or to protect a public interest.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and L. Jay Bartel for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PER CURIAM.

## I. NATURE OF CASE

In 2007, the Nebraska Department of Revenue (Department) assessed a tax deficiency against Direct Media Marketing, Inc. (Direct Media), and Direct Media filed a protest and petition for redetermination. Direct Media did not request a hearing, nor did it make a payment to the Department. Years passed without a hearing, and Direct Media's petition for redetermination remained unresolved. Direct Media ceased operations in 2011.

In 2021, the Department issued a notice and demand for payment to Allen Crow as a responsible officer of Direct Media. Crow petitioned the Department for redetermination of the amount assessed and of his liability as the responsible officer for Direct Media's taxes. The Tax Commissioner (Commissioner) held a consolidated hearing on both Direct Media's petition for redetermination and Crow's petition for redetermination and, in two separate orders, ruled against Direct Media and Crow. Crow sought review in the district court for Lancaster County pursuant to the Administrative

Procedure Act, see Neb. Rev. Stat. § 84-917 (Cum. Supp. 2022), specifically addressing the order concerning officer liability. The district court affirmed. Crow appeals from the order of the district court. We affirm.

## II. STATEMENT OF FACTS

### 1. Direct Media Audit and Tax Deficiency Determination

Direct Media, a direct mail processor, operated from the 1980s through 2011. Crow was a corporate officer of Direct Media. In 2007, the Department audited Direct Media for the period from January 1, 2001, to January 31, 2007, and examined invoices for supplies Direct Media purchased for its business, mostly from out-of-state vendors. As a result of this audit, the Department issued a notice of deficiency determination to Direct Media and assessed unpaid use taxes against Direct Media. Crow received audit schedules and explanations of what was due from Direct Media. Crow was advised of the information that would be required to remove line items from the assessment. Crow's representative conceded that some deficiency was due. In September 2007, Direct Media filed a protest and petition for redetermination of the assessment, and several filings were made in Direct Media's protest case through October 2010. The hearing officer recused herself in 2010, and there is no evidence that any further action was taken on the case until 2021.

### 2. Direct Media Does Not Pay Taxes and Ceases Operations

Direct Media lost major customers in 2008 and 2009, and ultimately, it ceased operations in 2011. In his role as an officer, Crow made decisions for Direct Media regarding the disbursement of funds and the payment of creditors for Direct Media. According to Crow's testimony, when Direct Media ceased operations, it paid its bank loan with proceeds of the sale of hard assets, and there were some assets left over that

Crow took to his next employer. The Commissioner found that Crow's testimony "made clear that lack of funds to pay bills was not the reason for the failure of [Direct Media] to pay the taxes. Instead, it was because [Crow] did not believe he had to pay the taxes yet" because the protest of the taxes had not been decided.

### 3. CORPORATE OFFICER
### LIABILITY FOR CROW

The parties agree that Crow served as the president, vice president, secretary, and treasurer of Direct Media, which operated from the 1980s through 2011. Crow had significant ownership of Direct Media and oversaw its corporate financial affairs. He had the authority to hire and fire employees for Direct Media, controlled its bank accounts, and had check-signing authority. He made decisions regarding the disbursement of funds and the payment of creditors.

In February 2021, the Department issued a notice and demand for payment pursuant to Neb. Rev. Stat. § 77-1783.01 (Reissue 2018) that alleged that Crow was a responsible officer personally liable for the amount of Direct Media's assessed taxes. Crow filed a petition for redetermination and a request for hearing, which sought to redetermine the amount of any sales or use taxes found to be due and owing by Direct Media and to redetermine his liability as a responsible officer. Specifically, Crow alleged that he had acted reasonably and thus was not liable for the taxes. Crow asserted in the alternative that because of the Department's lack of diligence in Direct Media's protest case, the Commissioner should apply equitable principles to prevent injustice and forbear from ordering Crow to pay Direct Media's tax liability. Crow also challenged the amount of taxes owed by Direct Media and the interest assessment, and he further stated that he had reasonably believed that some of the payments made by Direct Media were exempt from sales and use taxes or had already been paid.

### 4. Department Hearing and Two Orders

Direct Media's petition for redetermination of its deficiency determination and Crow's petition for redetermination of his officer liability were consolidated for hearing. In two orders, the Commissioner, on behalf of the Department, affirmed the deficiency determination against Direct Media in the case against Direct Media and separately affirmed Crow's personal liability for the payment of taxes as the responsible officer of Direct Media in the case against Crow.

At the consolidated hearing, the issues before the Commissioner on Crow's petition were (1) whether Crow rebutted the presumption that Direct Media owed the use taxes and (2) whether Crow was liable for the taxes as the responsible officer for Direct Media by willfully failing to have Direct Media pay taxes owed by Direct Media.

The Commissioner first addressed Crow's challenge to the amount of taxes owed by Direct Media for which the Department sought to hold him personally liable. At the hearing, the parties to the consolidated docket stipulated that "[i]f the liability is upheld against Direct Media . . . the correct amount due is $51,233.54 in tax, $5,168 in penalty, and all accrued and accruing interest."

Turning to the question of whether liability existed, the Commissioner noted that Direct Media had been unable to rebut the presumption that it was liable for use taxes or rebut the amount of the taxes. Despite the Department's substantial delay in conducting the proceedings, the Commissioner found that Direct Media could have asked for a hearing at any point. Further, the Commissioner found that Crow did not show he was prejudiced by the Department's delay in resolving the protest of Direct Media's liability, because even at the time of the audit in 2007, Direct Media did not possess complete records to rebut the presumption that the taxes assessed against it are correct. In this regard, Crow had testified that Direct Media kept records for only 3 to 5 years, so it lacked the complete records necessary for the 2007 audit, and that

at that time, its records were for only the 3 years prior to the audit.

The Commissioner also reviewed Crow's testimony suggesting, based on his telephone conversations with some vendors, that some taxes had been collected in connection with some transactions. However, Crow did not produce documentary evidence that showed taxes had been paid or suggested that transactions and invoices identified by the Department were not subject to taxes. The Commissioner determined that Direct Media failed to carry its burden to show that the assessment of tax deficiency against it was incorrect and affirmed the Department's deficiency determination against Direct Media.

Regarding the issue of whether Crow was responsible for Direct Media's liability, the record shows that the parties stipulated to Crow's activities and control of finances for Direct Media. The Commissioner determined that Crow oversaw the financial affairs of Direct Media and was a responsible officer of Direct Media for purposes of § 77-1783.01. See 316 Neb. Admin. Code, ch. 36, § 013.01A (2014). Crow does not dispute that he was a responsible officer of Direct Media. However, he continues to contend that he could not be liable for Direct Media's use tax deficiency, because there was no "willful failure" on his part to pay Direct Media's taxes. Crow claimed that it was reasonable for him to assume that Direct Media did not need to pay the taxes, because of the pending protest.

The Commissioner found that Crow had chosen to pay all other expenses and creditors of Direct Media but not the use tax deficiency, even though Crow was aware of the deficiency determination and knew that Direct Media lacked records for many of the audit years. The Commissioner found that Crow failed to show that on behalf of Direct Media, he did not intentionally, consciously, and voluntarily fail to pay taxes that were due and owing. The Commissioner denied Crow's petition for redetermination of notice of deficiency

determination and affirmed the Department's notice of deficiency determination for Crow.

### 5. Petition for Review to District Court, and District Court Order

Crow filed a petition for review in the district court for Lancaster County, challenging the outcome of the Department proceedings as being unsupported by competent evidence, arbitrary or capricious, or affected by errors of law. See Neb. Rev. Stat. § 77-27,127 (Reissue 2018) and § 84-917. Crow attached the Commissioner's order in Crow's case in which he sought a redetermination of his liability as a responsible officer of Direct Media.

The district court affirmed the Commissioner's order. In its order, the district court stated that Crow had filed a petition for review but Direct Media had not and that

[t]hus, the matter docketed [as Crow's responsible officer matter] is before this Court but not the matter docketed as [Direct Media's deficiency]. Under the relevant statute, however, [Crow] can challenge both the amount of Direct Media's unpaid taxes and [his] personal liability therefor. See Neb. Rev. Stat. § 77-1783.01(2) . . . .

With regard to the amount of Direct Media's use tax liability, the court stated that Crow's testimony—to the effect that he had talked to some vendors who had told him they collected sales tax—had not rebutted the presumption that the deficiency amount was correct, especially in light of the fact that the Department's auditor had reviewed actual invoices for the majority of the payments on which sales taxes had not been collected. The court also cited a concession by Crow's representative in a 2008 letter that some of the deficiency was due.

The district court addressed whether Crow's decision not to pay Direct Media's taxes amounted to a "willful failure" sufficient to hold him liable as a responsible corporate officer under § 77-1783.01. The court found it significant that Crow

was aware of Direct Media's tax debt as of 2007, yet subsequently paid other debts of the company. The court agreed with the Commissioner's conclusion that there was no evidence that Crow was prejudiced by the delay in the Department's prosecution of the matter. Regarding Crow's request for equitable relief under the theory of laches based on the unexplained significant delays in the case, the district court concluded that laches should not be applied against the government, especially where there was no prejudice shown to the party seeking the relief.

Crow appeals.

## III. ASSIGNMENTS OF ERROR

Crow assigns, summarized and restated, that the district court erred when it determined that (1) Crow failed to rebut the presumption that the use tax deficiency assessment against Direct Media was correct; (2) Crow was personally liable for Direct Media's unpaid taxes because, as a responsible officer, he willfully failed to pay the taxes; and (3) equitable relief was not justified in this case.

## IV. STANDARDS OF REVIEW

[1,2] Any final action of the Commissioner may be appealed, and the appeal shall be in accordance with the Administrative Procedure Act. *Houghton v. Nebraska Dept. of Rev.*, 308 Neb. 188, 953 N.W.2d 237 (2021). In an Administrative Procedure Act review proceeding, the district court reviews the agency's decision de novo on the record of the agency and may affirm, reverse, or modify the decision of the agency or remand the cause for further proceedings. *Houghton v. Nebraska Dept. of Rev., supra*.

[3,4] In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record. *Houghton v. Nebraska Dept. of Rev., supra*. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether

the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Houghton v. Nebraska Dept. of Rev., supra*.

[5-7] Although a party can raise estoppel claims in both legal and equitable actions, estoppel doctrines have their roots in equity. *Nelssen v. Ritchie*, 304 Neb. 346, 934 N.W.2d 377 (2019). The defense of laches is also equitable in nature. *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020). In reviewing judgments and orders disposing of claims sounding in equity, we decide factual questions de novo on the record and reach independent conclusions on questions of fact and law. *Nelssen v. Ritchie, supra*.

## V. ANALYSIS

Crow claims that the district court erred in several respects. Below, we discuss each of his assignments of error and determine that the record supports the district court's determinations that (1) the amount of the tax assessment against Direct Media was not rebutted; (2) as a corporate officer, Crow willfully failed to pay Direct Media's tax liability; and (3) Crow is not entitled to equitable relief against the Department.

### 1. AMOUNT OF DIRECT MEDIA'S UNPAID TAXES

In its de novo review, the district court determined that Crow failed to rebut the presumption that the use tax deficiency assessment against Direct Media was correct. We find no errors appearing on the record and reject this assignment of error.

[8] Nebraska imposes a tax on each item of tangible personal property in this state at some point in the chain of commerce, unless the item is specifically excluded from taxation. *Big Blue Express v. Nebraska Dept. of Rev.*, 309 Neb. 838, 962 N.W.2d 528 (2021). Currently, if the item is purchased in Nebraska, the sales tax applies, and if the item is purchased outside Nebraska, the use tax applies. *Id*. Accord Neb. Rev. Stat. § 77-2703 (Cum. Supp. 2022). Nebraska's sales and

use taxes are thus interrelated, and together, they provide a uniform tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property. *Big Blue Express v. Nebraska Dept. of Rev., supra*. A taxpayer does not owe the use tax if the seller paid the sales tax on the purchase. § 77-2703(2)(a). An out-of-state vendor not engaged in business in Nebraska may have had no obligation to collect Nebraska sales tax until *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 138 S. Ct. 2080, 201 L. Ed. 2d 403 (2018), but use tax has been due on all purchases for which sales tax was not remitted, since the adoption of the Nebraska Revenue Act of 1967. See Neb. Rev. Stat. § 77-2701 et seq. (Reissue 2018 and Cum. Supp. 2022).

[9] In proceedings before the Commissioner, the taxpayer generally has the burden of proof. § 77-2781. Crow stipulated at the hearing that "[i]f the liability is upheld against Direct Media . . . the correct amount due is $51,233.54 in tax, $5,168 in penalty, and all accrued and accruing interest." Even though this stipulation exists in the record, Crow claims he carried the burden of proof and rebutted the correctness of the amount of use taxes assessed, based on his testimony that suggested some taxes may have been paid in connection with transactions with some of Direct Media's vendors.

[10] Our decision is driven by our standard of review. *Houghton v. Nebraska Dept. of Rev.*, 308 Neb. 188, 953 N.W.2d 237 (2021). As recited above, this court's review is not de novo. *Id*. Instead, we review the district court's order for errors appearing on the record. *Id*. We are not entitled to weigh evidence or decide issues anew. *Acklie v. Nebraska Dept. of Rev.*, 313 Neb. 28, 982 N.W.2d 228 (2022). In conducting such a review, we will not substitute our factual findings for those of the district court where competent evidence supports those findings. *Houghton v. Nebraska Dept. of Rev., supra*.

The record shows that the Department relied on Direct Media's invoices to determine whether taxes had been paid in connection therewith. The deficiency determination was

based on invoices for about three-quarters of the payments showing no taxes were paid. Crow offered no documentary evidence showing collection of the taxes for payments where the invoice lacked documentation of taxes, or for payments without an invoice. The record supports the district court's determination that Crow did not rebut the presumption that the use taxes assessed against Direct Media were correct. This assignment of error is without merit.

## 2. Crow's Personal Liability
### for Direct Media's Taxes

Crow next claims that his decision not to pay Direct Media's use taxes was reasonable and not "willful failure" as contemplated in § 77-1783.01, because Direct Media had protested the deficiency determination. We disagree.

Section 77-1783.01(1) regarding liability of responsible officers provides, in relevant part:

> (1) Any officer or employee with the duty to collect, account for, or pay over any taxes imposed upon a corporation or with the authority to decide whether the corporation will pay taxes imposed upon a corporation shall be personally liable for the payment of such taxes in the event of willful failure on his or her part to have a corporation perform such act.

There is no dispute in this case that Crow is a responsible officer under § 77-1783.01(1).

[11] Crow contends that the district court erred when it found on de novo review that insofar as Crow is a responsible officer, there was a "willful failure" on his part to have Direct Media pay the taxes. Under the corporate officer or employee personal liability statute, willful failure is defined to mean "that failure which was the result of an intentional, conscious, and voluntary action." § 77-1783.01(7)(c). Intent is a question of fact, which may be determined by circumstantial evidence. *Houghton v. Nebraska Dept. of Rev., supra*.

The district court applied this definition and found that Crow willfully failed to have Direct Media pay its taxes. It found that Crow was personally involved in paying vendors and was subjectively aware of Direct Media's tax debt by August 31, 2007, the date of the deficiency determination, and noted evidence that Crow may have known earlier. Crow was informed by the Department's auditor of the results of the audit, was shown the audit schedules, and learned what was needed to remove items from the assessment of the deficiency.

As noted above, in reviewing the district court's order for errors appearing on the record, we will not substitute our factual findings for those of the district court where competent evidence supports those findings. *Houghton v. Nebraska Dept. of Rev., supra*. Here, such evidence supports the district court's factual findings. The evidence shows that despite learning of Direct Media's unpaid taxes, Crow deliberately chose to pay other creditors over the next 4 years. When Direct Media ceased operations, Crow elected to pay a bank loan and take assets to his next employment rather than paying the unpaid deficiency. The Nebraska Administrative Code provides that "[e]vidence of willfulness" is shown where a responsible party is aware taxes are due and owing and nevertheless pays other creditors. 316 Neb. Admin. Code, ch. 36, § 013.01B(1) and (2).

We further note that although Direct Media had protested the tax assessment, Crow could not reasonably have believed that the tax assessment would be rebutted in any significant way, since Direct Media did not possess supporting records to prove that taxes were paid. Crow knew that Direct Media owed taxes and, given its document retention policy, knew that Direct Media lacked evidence to show the deficiency assessment was in error. The record supports the district court's findings that under the plain and ordinary meaning of § 77-1783.01, Crow willfully failed to pay Direct Media's taxes. The district court did not err when it determined that Crow was a responsible officer who willfully failed to pay

Direct Media's use taxes under § 77-1783.01. We reject Crow's second assignment of error.

### 3. Equitable Relief

Notwithstanding that Crow willfully failed to have Direct Media pay the taxes owed, he seeks equitable relief based on the Department's delay in pursuing this case. Crow observes that the demand for payment by Crow as a responsible officer was issued in 2021, a decade after Direct Media ceased operations and 20 years after the first transactions giving rise to the underlying audit. It appears from the record that after Direct Media's protest of the deficiency determination was docketed, several filings were made. But after the hearing officer recused herself in 2010, no further action was taken until July 2021. During this gap between 2010 and 2021, neither Direct Media nor the Department requested a hearing on Direct Media's petition to redetermine the use tax assessment. Crow claims that equitable principles should be applied to avoid injustice. Below, we analyze Crow's request for application of equitable estoppel and laches that, if applied, Crow asserts would permit him to avoid being liable for Direct Media's unpaid taxes. We determine that despite the lengthy delays in this case, Crow was not prejudiced and the facts of this case do not support equitable relief.

### (a) Equitable Estoppel

[12] Crow seeks relief based on a theory of equitable estoppel. Equitable estoppel generally bars a party from relief because of its prior actions. See *Berrington Corp. v. State*, 277 Neb. 765, 765 N.W.2d 448 (2009). In this case, Crow seeks to estop the Department from achieving relief because it delayed pursuing this case. We find equitable estoppel inapplicable to this case.

[13] The State and its political subdivisions can be equitably estopped, but the doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand; in

such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice. *Id.*

[14] The elements of equitable estoppel are, as to the party estopped:

> (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.

*Id.* at 774, 765 N.W.2d at 455.

As to the other party, the elements are:

> (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

*Id.*

With respect to estopping the Department from assessing taxes against Crow, this theory fails at the onset. Crow did not allege, nor did any evidence show, that the Department made a misrepresentation or represented any position other than the position that Direct Media owed unpaid use taxes. A taxpayer cannot ignore ongoing proceedings to redetermine assessed taxes in the hope that the tax assessment may be relieved by the errors or negligence of government employees. Neither Direct Media nor Crow ever possessed sufficient evidence to rebut the presumption that the deficiency determination was correct, and Crow could not reasonably rely on procedural delays in the hope that the passage of time would satisfy the unpaid taxes. To the extent that Crow's third assignment of error is based on equitable estoppel, it is without merit.

### (b) Laches

[15-19] Crow also argues that application of the doctrine of laches precludes him from being found liable for Direct Media's unpaid taxes. We have explained that the defense of laches is not favored in Nebraska. *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020). Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice. *Id*. Laches does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another. *Id*. What constitutes laches depends on the circumstances of the case. *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015). Notably, laches cannot be applied where there has been no material change in a party's position. See *State v. Jarchow*, 219 Neb. 88, 362 N.W.2d 19 (1985).

As an initial matter, we note that because the Department's demand on Crow for payment was made no more than 3 years after the final determination of Direct Media's liability, it was timely. See § 77-1783.01(6). In this way, the demand on Crow was not delayed. Further, as noted above, there is no evidence in the record that Crow suffered a material change in his position or that he was prejudiced by the passage of time in this case after Direct Media's protest proceedings stalled. Crow did not testify or show that his defense was affected, likely because Direct Media had not possessed complete records at the time of the audit in 2007, and the existing records showed the taxes were not paid for many invoices. At that time, Direct Media kept records for only 3 years in some cases. Thus, there is no indication that records or material witnesses were lost due to the passage of time.

[20] While the delay in pursuing Direct Media in this case was extreme, we must also consider that the activity Crow wishes to estop is that of the government while carrying out its "unique governmental functions for the benefit of the

whole public." *United States v. Georgia-Pacific Company*, 421 F.2d 92, 101 (9th Cir. 1970). We have long recognized the general rule that the doctrine of laches cannot be applied against public rights. See *State v. Jarchow, supra*. We have stated that laches is not available against the government or state in a suit by it to enforce a public right or to protect a public interest. *Id.* (citing *State v. Platte Valley Public Power and Irrigation District*, 143 Neb. 661, 10 N.W.2d 631 (1943)). Courts have found that the assertion of laches is not available against taxing authorities seeking to collect taxes belatedly. E.g., *In re A-Plus Auto Wholesalers, LLC*, 379 B.R. 228 (D. Conn. 2007); *United States v. Huyser*, No. 4:23-cv-00144-SHL-SBJ, 2023 WL 6477930 (S.D. Iowa 2023).

The government's neglect of its proceedings regarding Direct Media is troubling, and we do not condone the long delays in this case. However, as the U.S. Supreme Court has explained, applying laches to the government would violate a "great public policy," and the Court has observed:

> The government can transact its business only through its agents[;] and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions. . . . On the other hand, the mischiefs to the agents and their sureties would be scarcely less tolerable.

*United States v. Kirkpatrick*, 22 U.S. (9 Wheat.) 720, 735, 6 L. Ed. 199 (1824).

Because the Department sought to enforce a public right—to protect public money—and Crow was not prejudiced by the passage of time, laches is not a defense to Crow's liability for the unpaid use taxes owed by Direct Media. To the extent that Crow's third assignment of error is based on laches, it is without merit.

## VI. CONCLUSION

The record supports the district court's determination that Crow failed to rebut the presumption of correctness of the

amount of use taxes assessed against Direct Media. Further, the evidence established that Crow was a responsible officer of Direct Media and that because of his willful failure to pay the use taxes for Direct Media, he was personally liable for the tax deficiency of Direct Media as the district court correctly determined.

We do not condone the Department's delay in pursuing proceedings against Direct Media and Crow. However, in the absence of demonstrated prejudice, equitable relief does not absolve Direct Media and Crow of liability in this case. We affirm the order of the district court that affirmed the order of the Commissioner.

Affirmed.

Miller-Lerman, J., concurring.

As I read the petition filed in the district court, Crow challenged his personal liability for Direct Media's unpaid use taxes and claimed the evidence was not sufficient to show that, as a responsible officer, his failure to pay the taxes was willful. His petition attached only the Department's order regarding his personal liability. Direct Media did not seek judicial review of the order affirming the amount of Direct Media's deficiency determination in its case.

In district court, Crow assigned the following errors to the decision of the Department regarding his personal responsibility, which decision was attached to Crow's petition filed in district court:

(a) That the evidence was insufficient to establish that the failure to pay use tax was willful.

(b) The decision was contrary to law.

(c) The decision was arbitrary, capricious and unreasonable.

(d) That an unreasonable delay of more than 14 years in the Department's disposition of an appeal of the underlying use tax liability of the Company, prejudiced

Crow in his ability to defendant [sic] against the assessment of the liability against the Company.

(e) That an unreasonable delay of more than 14 years in the Department's issuing the officer liability assessment against Crow prejudiced Crow's ability to defend against the officer liability assessment and was fundamentally unfair.

I do not believe that Crow sought review in district court of the determination of the amount of the use tax assessed against Direct Media. Perhaps sensing this ambiguity, the district court accommodated Crow by considering both Crow's personal liability as a corporate officer and the amount of Direct Media's unpaid taxes. The district court stated:

Thus, the matter docketed before the Tax Commissioner as [Crow's responsible officer matter] is before this Court but not the matter docketed as [Direct Media's deficiency]. Under the relevant statute, however, [Crow] can challenge both the amount of Direct Media's unpaid taxes and [Crow's] personal liability therefor. See Neb. Rev. Stat. § 77-1783.01(2) (Reissue 2018).

In support of its decision to consider both Crow's personal liability and the amount of the use tax liability of Direct Media, the district court cited Neb. Rev. Stat. § 77-1783.01(2) (Reissue 2018), which concerns how a corporate officer or employee files a petition for redetermination with the Department. Under § 77-1783.01(2), when an officer or employee files a petition seeking to challenge a responsible officer assessment by the Commissioner, the petition may include "a request for the redetermination of the personal liability of the corporate officer or employee, the redetermination of the amount of the corporation's unpaid taxes, or both." This statute permits a taxpayer protestor to combine the issues of personal liability and the amount of tax into one "petition." However, the "petition" referred to in § 77-1783.01(2) is a petition for redetermination filed before the agency, not a petition to the district court for review under the Administrative Procedure Act.

See Neb. Rev. Stat. §§ 77-27,127 (Reissue 2018) and 84-917 (Cum. Supp. 2022).

In my view, the district court's stated reason for examining both issues was based on an error of law. The trial court read the statute differently than I do. I believe that based on the limited scope of Crow's petition filed in district court, the district court should have analyzed only the issue of Crow's personal liability. Regarding Crow's personal liability for Direct Media's unpaid use taxes, I agree with the reasoning of the district court, as affirmed by the majority opinion.

That said, I concur in the result.